# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **LEROY J PETE JR** | **CASE NO.  6:18-CV-01239** |
| **VERSUS** | **JUDGE JUNEAU** |
| **U S COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Leroy J. Pete, Jr., originally filed an application for disability insurance benefits ("DIB") and an application for supplemental security income benefits ("SSI") on April 11, 2011, alleging disability beginning on February 11, 2007, due to arthritis, high blood pressure and pancreatitis.  His applications were denied, and the claimant requested a hearing which was held on November 1, 2012, before Administrative Law Judge Lawrence Ragona.[1]  The ALJ issued a decision on December 21, 2012,[2] concluding that the claimant was not disabled within the

---

[1] The transcript of the first hearing is found at. Tr. 451-76.
[2] Tr. 387-96.

meaning of the Social Security Act ("the Act"), and the Appeals Council upheld the ALJ's decision on February 25, 2014.[3]

The claimant filed a *pro se* appellate brief with this Court on June 19, 2015.[4] After the Commissioner filed a responsive brief on August 3, 2015, the claimant retained counsel, who filed a reply brief. On January 7, 2016, this Court issued a judgment in the claimant's favor, remanding the matter for a supplemental hearing. Specifically, the court found that the ALJ failed to properly evaluate the effects of the claimant's pain as well as the side effects of his medications on his RFC. The Court remanded the case to the ALJ so that he could consider the claimant's non-exertional impairments of pain and the side effects of his medication in his RFC.

A supplemental hearing was held on June 5, 2017.[5] At that time, the claimant's representative sought to amend the claimant's onset date to either August 10, 2012, or at the latest, August 24, 2012.[6] The claimant acknowledged his understanding at that time that the amended date made him ineligible for Title II benefits, as his date last insured under Title II was June 30, 2011.[7] The ALJ issued

---

[3] Tr. 401-03.
[4] See *Pete v. Comm'r of Social Security*, Civil Action No. 14-0821.
[5] The transcript of the June 5, 2017 hearing is found at Tr. 338-60.
[6] Although the transcript of the supplemental hearing makes clear that the claimant sought to amend his onset date to August 2012, the ALJ found in his ruling that the onset date is October 15, 2012. The claimant does not assign this as an error of the ALJ, therefore, it is merely noted for the sake of completeness of the record.
[7] Tr. 343.

a partially favorable decision on September 14, 2017, finding the claimant disabled but only as of March 17, 2017.[8]

The claimant appealed the ALJ's decision on October 12, 2017, and the Appeals Council upheld the ALJ's decision on July 25, 2018.[9] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on October 25, 1960 and was 52 years old at the time of his amended onset date. The claimant has a high school education, and his past relevant work was identified by the vocational expert ("VE") as laundry worker and order filler.[10] These jobs are defined by the DOT as "light" and "medium." The claimant alleges that substantial evidence does not support the ALJ's finding that the claimant can perform light work, because of the combination of his impairments, his pain, and the side effects of his medications.

---

[8] Tr. 323-30.
[9] Tr. 316-19.
[10] Although the claimant submits that he has no past relevant work because he last performed work more than 15 years ago, the ALJ clearly found that the claimant has past relevant work as a laundry worker. The claimant does not allege that this was an error on the part of the ALJ.

3

## ANALYSIS

**A.     STANDARD OF REVIEW**

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[11] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[13]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[14] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[15]

---

[11]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).
[12]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).
[13]    *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).
[14]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[15]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[16] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[17]

**B.    ENTITLEMENT TO BENEFITS**

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[18] Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[19]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[20] A

---

[16]    *Martinez v. Chater*, 64 F.3d at 174.
[17]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.
[18]    See 42 U.S.C. § 423(a).
[19]    42 U.S.C. § 1382(a)(1) & (2).
[20]    42 U.S.C. § 1382c(a)(3)(A).

claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[21]

C.   **EVALUATION PROCESS AND BURDEN OF PROOF**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[22]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. "A finding that a claimant is disabled

---

[21]   42 U.S.C. § 1382c(a)(3)(B).
[22]   20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[23]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[24] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[25] The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[26]

The claimant bears the burden of proof on the first four steps.[27] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[28] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[29] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[23] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).
[24] 20 C.F.R. § 404.1520(a)(4).
[25] 20 C.F.R. § 404.1545(a)(1).
[26] 20 C.F.R. § 404.1520(e).
[27] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[28] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[29] *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

rebut this finding.[30] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[31]

### D. THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since October 15, 2012, his alleged onset date.[32] This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: degenerative disc disease of the lumbar spine; hypertension; and peripheral vascular disease with intermittent claudification.[33] This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[34] The claimant challenges this finding.

At step four, the ALJ found that, prior to March 17, 2017 – which is the date the ALJ determined the claimant became disabled – the claimant had the residual functional capacity to perform light work, except that the claimant could lift 20

---

[30] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.
[31] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).
[32] Tr. 325.
[33] Tr. 325.
[34] Tr. 326.

pounds occasionally, 10 pounds frequently, could stand, walk, and sit for 6 hours in an 8-hour workday; and due to the medications that he takes, could not perform complex work. After March 17, 2017, the ALJ determined that the claimant has the residual functional capacity to perform the full range of sedentary work. Therefore, the ALJ found that prior to March 17, 2017, the claimant was capable of performing past relevant work as a laundry worker, but that beginning on March 17, 2017, the claimant's residual functional capacity prevents the claimant from being able to perform past relevant work. The ALJ determined that as of March 17, 2017, the claimant does not have work skills that are transferable to other occupations considering his RFC, and therefore, there are no jobs that exist in significant numbers in the national economy that the claimant can perform. Therefore, the ALJ determine that the claimant was disabled as of March 17, 2017.[35] The claimant challenges the ALJ's finding that the claimant had the residual functional capacity to perform light work prior to March 17, 2017.

### E. THE ALLEGATIONS OF ERROR

The claimant alleges that the ALJ improperly assessed his residual functional capacity in finding that he can perform light work for the period from October 15, 2012 through March 17, 2017 and failed to include all of the claimant's impairments

---

[35] Tr. 329-30.

in his hypotheticals to the VE. Specifically, the claimant argues that on remand, the ALJ did not consider the effects of his pain and the side effects of his medication on his overall impairments and ability to do light work. The claimant also alleges that he functionally equals a listing. Consequently, the claimant contends the ALJ's finding of non-disability is not supported by substantial evidence.

### F.  RESIDUAL FUNCTIONAL CAPACITY

Residual functional capacity is considered the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting *on a regular and continuing basis*. SSR 96-8p, 1996 SSR LEXIS 5, *5. Although the ALJ is responsible for determining a claimant's RFC by reviewing all of the evidence, *Young v. Berryhill*, 689 F. App'x 819, 821 (5th Cir. 2017) (citation omitted), the claimant has the burden of production at Step 4 when RFC is determined. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); 20 C.F.R. §§ 404.1512, 416.912. The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence. *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (citations omitted).

In this case, the ALJ determined that prior to March 17, 2017 – which is the date the ALJ determined the claimant became disabled – the claimant had the residual functional capacity to perform light work, except that the claimant could lift 20 pounds occasionally, 10 pounds frequently, could stand, walk, and sit for 6 hours

in an 8-hour workday; and due to the medications that he takes, could not perform complex work. Once an RFC has been determined, the claimant has the burden of production at Step 4. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); 20 C.F.R. §§ 404.1512, 416.912.

In support of his argument that the ALJ improperly assessed his RFC, the argues that as of October 15, 2012, there is clinical evidence supporting his contention that he cannot perform a full range of light work as a result of multi-level degenerative changes and varying degrees of neural foraminal stenosis in his back, specifically at the L3-4 to L5-S-1 levels, which causes pain when bending or stooping. The claimant argues that an inability to bend or stoop will usually prevent the performance of light work. The claimant also points to an August 10, 2011 Doppler study, which he argues revealed an ankle brachial index (ABI) ratio of .72 on the right and .80 on the left.[36] The claimant argues this study revealed claudification at 100 feet.[37] The claimant submitted records from December 20, 2016, showing an ABI of .50 on the right and left, with claudification at 20 feet.[38] The claimant argues that had the study revealed an ABI ratio of less than .50, the claimant's impairment would have met Listing 4.12.[39] Thus, the claimant argues

---

[36] Tr. 281-82.
[37] Tr. 287.
[38] Tr. 569.
[39] The undersigned has considered the claimant's argument that he substantially meets Listing 4.12, however, the record does not support this. The record shows that the claimant fails to cite to

11

that this impairment, along with all of his other impairments, satisfies the listing in combination for this time period. The claimant argues that the record shows he has complained of pain when walking more than 100 yards, which causes burning in his hip. The claimant also asserts that walking causes the claimant to have to sit and elevate his feet for two to three hours a day.

In addition to the foregoing, the claimant argues that the ALJ did not consider the effects of his pain and the side effects of his medication on his overall impairments, as he was instructed to do when this Court remanded his case. In 2016, this Court found that the ALJ failed to properly evaluate the effects of the claimant's pain as well as the side effects of the medications on his RFC and remanded the matter for consideration of those issues. The claimant argues that on remand, the ALJ failed to properly evaluate his complaints of pain and the effects of his medications on his impairments, and despite having evidence of more limiting impairments after the 2011 studies, came to the same conclusion as in the original decision, namely, that the claimant can perform a full range of light work before March 17, 2017. The claimant argues that this decision is not supported by the medical evidence in the record.

---

objective medical evidence showing that he has a condition that satisfies *all* the requirements of Listings 1.02A (major dysfunction of a joint) or 4.12 (peripheral arterial disease). *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (claimant must manifest all the specified criteria of a particular listing to qualify for disability under that listing).

The record shows, however, that the ALJ referenced the medications taken by the claimant in his functional capacity assessment. Specifically, the ALJ found in his decision that, prior to March 17, 2017, the claimant had the residual functional capacity to perform light work with certain restrictions, and "due to the medication he takes, could not perform complex tasks."[40] The ALJ also obtained vocational expert testimony to establish that jobs existed prior to March 17, 2017 for a hypothetical individual with the claimant's combination of impairments. Consequently, the ALJ complied with this Court's instructions on remand to consider the effects of the claimant's pain and medications on his ability to perform work.

Additionally, after a review of the record and the medical evidence therein, the undersigned finds the ALJ's residual functional capacity assessment prior to March 17, 2017 is supported by substantial evidence. On August 11, 2011, consultative examiner Kenneth A. Ritter reported that the claimant was "alert and oriented" and "in no acute distress"[41] Dr. Ritter observed normal strength and sensation, and negative straight-leg-raise testing bilaterally. In addition, he noted normal range of motion in all of the claimant's joints, without tenderness or swelling of any joint. *See* SSR 96-8p at *5 (identifying "recorded observations" as evidence

---

[40] Tr. 326 (emphasis added).
[41] Tr. 250, 327.

that affects the RFC assessment). The ALJ considered that Dr. Ritter acknowledged the claimant's complaints of back pain, but noted that Dr. Ritter reported "an essentially normal back exam."[42] *See* SSR 16-3p, 2016 WL 1119029, at *5 (identifying "a report of minimal or negative findings or inconsistencies in the objective medical evidence" as a factor considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms, such as pain). The ALJ also addressed Dr. Ritter's "Medical Assessment of Ability To Do Work-Related Activities," wherein he opined that the claimant's alleged impairments, including back pain, did not affect his ability to sit, stand/walk, and lift/carry.[43] *See* SSR 96-8p at *5 (a "medical source statement" is one of eleven types of evidence considered when assessing RFC). Dr. Ritter opined that the claimant did not have any manipulative or environmental restrictions, and the claimant could frequently perform postural functions, such as stooping, kneeling, balancing, and crouching.[44]

In reaching his conclusion that the claimant could perform light work prior to March, 2017, the ALJ also considered the October 2012 MRI, which showed "multi-level, multi-pectoral degenerative changes resulting in varying degrees of neural foraminal stenosis from the L3-4 to L5-S1 levels."[45] In addition, the ALJ considered

---

[42] Tr. 251, 327-28.
[43] Tr. 251-52, 328.
[44] Tr. 252-53, 382.
[45] Tr. 303, 316, 328.

14

that a November 2014 MRI similarly showed multi-level degenerative changes and bilateral neural foraminal stenosis at L5-S1.[46] The record is clear that the ALJ considered this evidence and accounted for it by limiting the claimant to light work prior to March 17, 2017.[47] *See Ozment v. Astrue*, No. 07-1453, 2008 WL 4450281, at *3-6 (W.D. La. Sept. 28, 2008) (substantial evidence supported a light RFC despite spinal stenosis).

The social security regulations make clear that the ALJ is the fact-finder, and the Commissioner is not required to adopt the RFC verbatim from a medical opinion, thereby nullifying the ALJ's role as fact-finder. *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016); *see also Aymond v. Comm'r of Social Security*, No. 1:15-CV-02489, 2016 WL 8539770, at *10 (W.D. La. Nov. 17, 2016) (recognizing that RFC is an "administrative assessment"); 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8p at *5 (an RFC assessment is an administrative finding of fact, and the ALJ is responsible for making this assessment). Indeed, "[i] is the responsibility of the ALJ to ***interpret*** 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot*, 661 F. App'x at 277 (citing *Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012)) (emphasis added). Here, the undersigned finds the ALJ complied with the relevant legal standards when assessing the claimant's RFC for

---

[46] Tr. 316, 328, 580.
[47] Tr. 326, 328.

the period prior to March 17, 2017. Considering the foregoing, the undersigned concludes that substantial evidence supports a light RFC assessment prior to March 17, 2017. *See Biestek*, 139 S.Ct. at 1154 (the threshold for the substantial evidence standard "is not high").

Finally, the ALJ relied upon the testimony of the vocational expert, who testified that a hypothetical individual with the claimant's RFC could perform his past relevant work as a laundry worker prior to March 17, 2017.[48] "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed" (Tr. 560-62). *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

The claimant argues that the ALJ's hypothetical questions to the VE were defective because they did not include all of the claimant's limitations or ask about "pain as a limiting factor."[49] As an initial matter, the undersigned notes that a hypothetical question posed to a VE is not defective when the claimant or his representative does not object to limitations therein despite the ALJ giving them the opportunity to do so. *See Hardman v. Colvin*, 820 F.3d 142, 148-149 (5th Cir. 2016). At the hearing, the ALJ gave the claimant and his representative an opportunity to

---

[48] Tr. 326, 329, 355-56.
[49] Tr. 355-56.

16

cross-examine the VE, but they did not ask any questions about "pain as a limiting factor," or otherwise attempt to correct alleged deficiencies in the hypothetical question.[50] Additionally, the ALJ found that the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms, such as pain, were not fully supported prior to March 17, 2017 (Tr. 327). The record shows that the VE considered the restrictions and impairments the ALJ recognized and the record supported, and the claimant had the opportunity to question the VE.[51] *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). *See also Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7-*8 (W.D. La. Mar. 24, 2009) (VE testimony provided substantial evidence supporting the step four finding). For these reasons, the claimant's VE-centered arguments are not persuasive.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned finds that the ALJ applied appropriate legal standards in ruling on this case, and the ALJ's findings are based on substantial evidence in the record. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED,** and this matter dismissed with prejudice.

---

[50] Tr. 356-57.
[51] Tr. 355-57.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 24th day of February, 2020.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE